**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

The Estate of RANDI SHAVONNE
KIRKLAND, by and through Special
Administrator, VIRGINIA KIRKLAND,

      Plaintiff,

v.

HT GLOBAL IT SOLUTIONS HOLDINGS
LIMITED;
HEXAWARE TECHNOLOGIES;
HEXAWARE TECHNOLOGIES, INC.;
HEXAWARE TECHNOLOGIES
LIMITED;
HEXAWARE TECHNOLOGIES LTD;
HEXAWARE TECHNOLOGIES GMBH;
FOCUSFRAME, INC.;
HEXAWARE TECHNOLOGIES ASIA-
PACIFIC PTE, LTD.;
HEXAWARE TECHNOLOGIES
CANADA LIMITED;
HEXAWARE TECHNOLOGIES UK LTD;
SPECSOFT, INC.;
RISK TECHNOLOGY INTERNATIONAL,
LTD.;
HEXAWARE TECHNOLOGY &
BUSINESS SOLUTIONS, INC.;
EAN HOLDINGS, LLC, D/B/A
ENTERPRISE RENT-A-CAR;
NATIONAL CAR RENTAL;
VANGUARD CAR RENTAL USA, LLC;
GAURAV SHUKLA; and
UJJWAL NARAYAN

      Defendants

Case No. 19-CV-411-RAW

**ATTORNEYS LIEN CLAIMED**
**JURY TRIAL DEMANDED**

## <u>FIRST AMENDED COMPLAINT</u>

## HEXAWARE ALLEGATIONS

1.    Defendants HT Global IT Solutions Holdings, Limited, Hexaware Technologies,

Hexaware Technologies, Inc., Hexaware Technologies Limited, Hexaware Technologies Ltd., Hexaware Technologies GMBH, FocusFrame, Inc., Hexaware Technologies Asia-Pacific PTE, Ltd., Hexaware Technologies Canada Limited, Hexaware Technologies UK Ltd., Spec soft, Inc., and Hexaware Technology & Business Solutions, Inc. are collectively referred to as "Hexaware" or the "Hexaware Defendants".

2.      The Hexaware Defendants are comprised of alleged foreign corporations.

3.      Hexaware is a global company with annual revenue in excess of $650,000,000.[1]

4.      On and before October 1, 2019, Hexaware acted negligently, was negligent per se, grossly negligent, and/or reckless in general, company-wide, and also specifically with regard to Defendants Gaurav Shukla[2] ("Hexaware's Driver" or "Hexaware Driver") and Ujjwal Narayan[3] Hexaware's Passenger ("Hexaware's Passenger" or "Hexaware Passenger"), collectively and respectively with regard to at least the following;

   a.  **Vetting** of employees, agents, and/or contractors inclusive of those responsible for driving, supervision, monitoring, training; or being a passenger in a motor

---

[1] Hexaware had excellent 2018 growth revenue and profit. Hexaware 2018 Annual Report (https://hexaware.com/wp-content/uploads/2019/11/Annual-Report-2018.pdf) at 4. Hexaware is set to post a double-digit sales growth over FY 2019-20." *Id*. Hexaware is "one of the fastest growing IT services company[ies] with consistent growth ... and geographical expansion…." *Id*. Hexaware further intends to take advantage of "[w]orldwide spending on technologies and services [which] is forecast to reach USD 1.97 trillion by 2022." *Id*. Hexaware expects to spend $250-300 million on just acquisitions over the next two to three years." *Id* at 6. Revenue from operations was [over $650 million], with growth of 17.9% over FY 2017." *Id* at 8. Hexaware has over thirty global offices with 16,205 total employees. *Id* at 23.

[2] Defendant Shukla is an individual who allegedly resides in Chicago, Illinois.

[3] Defendant Hexaware's Passenger is an individual who allegedly resides in India.

vehicle;

b. **contracting** with employees, agents, and/or contractors inclusive of those responsible for driving, supervising, monitoring, training, or being a passenger in a motor vehicle;

c. **safety training** for employees, agents, and/or contractors inclusive of those responsible for driving, supervision, monitoring, training, or being a passenger in a motor vehicle;

d. **driver training** for employees, agents, and/or contractors;

e. **passenger training** for employees, agents, and/or contractors;

f. **development of safety** systems;

g. **development of safe driving systems**;

h. **entrustment of motor vehicles** inclusive of those leased through rental car companies;

i. **background checks** (including driver license checks) of employees, agents, and/or contractors inclusive of those responsible for safe driving or being a passenger while working for Hexaware;

j. **development of failure analysis** to prevent dangerous re-occurrences;

k. **supervision** of employees, agents, and/or contractors responsible for driving and being a passenger;

l. **monitoring** of employees, agents, and/or contractors responsible for driving or being a passenger;

m. **discipline** of employees, agents, and/or contractors;

n. **fleet management;** and

o. **other** negligent/grossly negligent/reckless acts/omissions.

5. Hexaware negligently, grossly negligently, and recklessly

a. vetted Hexaware's Driver and Hexaware's Passenger;

b. contracted and/or employed and/or acted in joint mission with and/or acted as principal of Hexaware's Driver and Hexaware's Passenger;

c. provided insufficient and/or inadequate safety training for Hexaware's Driver and Hexaware's Passenger;

d. provided insufficient and/or inadequate driver training for Hexaware's Driver;

e. provided insufficient and/or inadequate passenger training for Hexaware's Passenger;

f. developed inadequate safe drive systems and/or failed to create adequate safe driving systems for Hexaware's Driver and Hexaware's Passenger;

g. entrusted a vehicle to Hexaware's Driver and Hexaware's Passenger;

h. conducted inadequate background checks of Hexaware's Driver and Passenger to ensure the safety of the public;

i. chose not to or failed to obtain a sufficient amount of information regarding the alleged licensure of Hexaware's Driver before permitting Hexaware's driver to operate a motor vehicle for Hexaware;

j. entrusted a motor vehicle to Hexaware's Driver who does not appear to have been properly licensed in the state of his alleged licensing (Tennessee) or the state of his residence (Illinois);

   i. The Tennessee Department of Safety and Homeland Security,[4] required

---

4 https://www.tn.gov/safety/driver-services/classd/tdl.html

Hexaware's Driver to provide two forms of proof of identification and two forms of proof of Tennessee residency to obtain a Class XD driver's license.

ii. Without proof that Hexaware's Driver was an actual resident of the State of Tennessee, the State of Tennessee would not have issued a license to Hexaware's Driver and any license obtained by fraudulent pretense or documentation (yet to be discovered) is inadequate and an inadequate basis upon which to entrust a motor vehicle.

iii. Hexaware's Driver was required to notify the Tennessee Department of Safety and Homeland Security within ten (10) days of changing his address. T.C.A. § 55-50-333.

iv. Illinois law requires new residents to obtain an Illinois driver's license. IL ST CH 625 § 5/6-102.

v. Illinois does not recognize an International Driver's License.

vi. Illinois law also requires a driver to notify the Illinois Secretary of State's Office within 10 days of any change of address. Illinois Vehicle Code Sec. 3-416, 6-116, and 6-511.

vii. On October 1, 2019, Hexaware's Driver told Oklahoma Investigating Highway Patrol Officer Chasen Bennett, *See* Exhibit A, Official Oklahoma Traffic Collision Report, that his address was not in Tennessee but was in actuality located at 737 West Washington Boulevard, Apartment 1304, Chicago, Illinois 60661.

viii. On October 1, 2019, Hexaware's Driver provided a Tennessee Class XD driver's license (Number 124748739) to Oklahoma Investigating Highway Patrol Officer Chasen Bennett.

ix. Upon information and belief, Hexaware's Driver had resided in Illinois for longer than 10 days, rendering his Tennessee license invalid, as a matter of law.

x. A Tennessee Class XD license is a temporary restrictive license and requires residence in Tennessee, as described above.

xi. Before permitting Hexaware's Driver to drive while in employ of Hexaware, Hexaware should have made certain that Hexaware's Driver was properly licensed and following all applicable rules and regulations with a license that was obtained with valid assertions.

xii. Hexaware failed to do so and as a result negligently and recklessly entrusted a motor vehicle to Hexaware's Driver.

k. failed to use ordinary care by failing to perform an adequate investigation prior to October 1, 2019 into the licensure, background, and capabilities of Hexaware's Driver before allowing him to rent a vehicle at the express permission and direction of Hexaware at or near the Dallas/Fort Worth International Airport Terminal under the Hexaware corporate account.

6. Hexaware was negligent, reckless, grossly negligent in the vetting, hiring, contracting with, employment of, safety training or lack thereof, driver safety training or lack thereof, passenger training or lack thereof, development of safety driving systems or the lack thereof, fleet management, entrustment of a company leased vehicle, background checking, licensure checking, supervision, monitoring, and discipline of Hexaware Driver and Hexaware Passenger.

7. At all times material to this case, Hexaware was vicariously liable for the damages caused by Hexaware Driver and Hexaware Passenger; including for Hexaware Driver and Hexaware Passenger's negligence within the course and scope of employment/agency/partnership/contract with Hexaware.

8. Hexaware's herein described acts/omissions and those of its employees caused the occurrence at issue herein and damages set forth below.

## ENTERPRISE ALLEGATIONS

9. EAN Holdings, LLC, D/B/A/ Enterprise Rent-A-Car ("Enterprise"), National Car Rental, and Vanguard Car Rental USA, LLC (collectively, "Enterprise") was negligent in the entrustment of a motor vehicle to Hexaware, Hexaware's Driver, and/or Hexaware's Passenger.

10. Enterprise is a large company. It "continues to grow with more than 7,600 …locations in over 85 countries…"[5]

11. Enterprise routinely entrusts many thousands of vehicles to drivers.

12. Enterprise is a limited liability company that systematically does business in the

---

5 *See*: https://www.enterprise.com/en/about.html

state of Oklahoma.

13.     Enterprise alleges to be a foreign company but appears to have a principal place of business of Tulsa, Oklahoma.

14.     The collision report shows the address of EAN Holdings LLC as 14002 E. 21st Street, Tulsa, Oklahoma 74134.



15.     Here is a photograph that shows a vehicle with the markings of EAN Holdings, LLC with the Tulsa, Oklahoma address:



16.     This sign photographed at 14000 East 21St Street, in Tulsa, Oklahoma also shows that Enterprise Holdings is operating as late as 2018 in Oklahoma:



17.     It may turn out that Enterprise has a principal place of business in Tulsa, Oklahoma.

18.     If so, subject to discovery, this Court may lack subject matter jurisdiction and Plaintiff may file a motion to remand regarding same.

19.     Enterprise knows or reasonably should know that it must only entrust vehicles to people who are property licensed to drive and otherwise safe to be entrusted with a motor vehicle.

20.     Enterprise has the same burden that any other individual or company has to entrust vehicles carefully.

    a.  "An owner [or provider] of a vehicle has a duty to use ordinary care to avoid lending it to another person whom [it] knows or reasonably should know is [intoxicated/careless/reckless/incompetent to drive]."[6]

---

[6] Oklahoma Uniform Jury Instructions – Civil Chapter 10, Section Instruction 10.16

b. Enterprise owes a duty to the public to use ordinary care to avoid leasing cars to drivers whom it knows or should know are either intoxicated, careless, reckless, or incompetent.

c. Incompetence includes not having a license or a properly obtained license.

21. Just because Enterprise entrusts many vehicles on a daily basis does not mean that Enterprise gets to be less careful than anyone else.

22. In fact, Enterprise should be more careful because it is entrusting many vehicles to many people, which causes a higher risk to the public if Enterprise's safety systems are defective, inadequate, or negligent.

23. Enterprise should also be more careful than an ordinary owner of a motor vehicle because the people to whom Enterprise rents or entrusts cars to are strangers, as opposed to the situation of most people who entrust vehicles only to people that are known to the vehicle owners.

24. Enterprise did not use ordinary care and perform a reasonable investigation into the background and capabilities of Hexaware, Hexaware's Driver, and Hexaware's Passenger prior to entrusting vehicles to Hexaware and to Hexaware's Driver before and on October 1, 2019, in or near the Dallas/Fort Worth International Airport Terminal on October 1, 2019.

25. Had Enterprise done a reasonable investigation, it should have determined that Hexaware and Hexaware's Driver were careless, reckless, and/or otherwise incompetent to have vehicles entrusted to Hexaware and Hexaware's Driver because, among other reasons, Hexaware's Driver was not validly licensed at the time as required by Tennessee and/or Illinois state law.

i. The Tennessee Department of Safety and Homeland Security,[7] required Hexaware's Driver to provide two forms of proof of identification and two forms of proof of Tennessee residency to obtain a Class XD driver's license.

ii. Without proof that Hexaware's Driver was an actual resident of the State of Tennessee, the State of Tennessee would not have issued a license to Hexaware's Driver and any license obtained by fraudulent pretense or documentation (yet to be discovered) is inadequate and an inadequate basis upon which to entrust a motor vehicle.

iii. Hexaware's Driver was required to notify the Tennessee Department of Safety and Homeland Security within ten (10) days of changing his address. T.C.A. § 55-50-333.

iv. Illinois law requires new residents to obtain an Illinois driver's license. IL ST CH 625 § 5/6-102.

v. Illinois does not recognize an International Driver's License.

vi. Illinois law also requires a driver to notify the Illinois Secretary of State's Office within 10 days of any change of address. Illinois Vehicle Code Sec. 3-416, 6-116, and 6-511.

vii. On October 1, 2019, Hexaware's Driver told Oklahoma Investigating Highway Patrol Officer Chasen Bennett, *See* <u>Exhibit A</u>, Official Oklahoma Traffic Collision Report, that his address was not in Tennessee but was in actuality located at 737 West Washington Boulevard, Apartment 1304, Chicago, Illinois 60661.

viii. It is probable (but yet to be discovered with certainty) that Hexaware's Driver also notified Enterprise that Hexaware's residential address was in Illinois and not Tennessee; based on the fact that Hexaware's driver told law enforcement the Illinois address.

ix. On October 1, 2019, Hexaware's Driver provided a Tennessee Class XD driver's license (Number 124748739) to Oklahoma Investigating Highway Patrol Officer Chasen Bennett.

x. Upon information and belief, Hexaware's Driver had resided in Illinois for longer than 10 days, rendering his Tennessee license invalid, as a matter of law.

xi. A Tennessee Class XD license is a temporary restrictive license and requires residence in Tennessee, as described above.

xii. Before permitting Hexaware's Driver to drive an Enterprise owned vehicle, Hexaware should have made certain that Hexaware's Driver was properly licensed and following all applicable rules and regulations with a license that was obtained with valid assertions.

xiii. Enterprise failed to do so and as a result negligently and recklessly entrusted a motor vehicle to Hexaware's Driver and Hexaware.

---

7 https://www.tn.gov/safety/driver-services/classd/tdl.html

26.    Enterprise has a duty to check a driver's license prior to entrusting a vehicle to that driver to ensure the license is valid under that state's laws.

27.    When Hexaware's Driver showed up to Enterprise with a temporary license that requires residency in that state and the Hexaware Driver reported another state as the state of residency, Enterprise should have at least at that moment, not entrusted a motor vehicle to the incompetent Hexaware Driver.

28.    Alternatively, Enterprise should have noticed Hexaware's Driver's license was invalid given the state of issuance on his license did not match Hexaware's Driver's state of residence.

29.    Enterprise's systems are inadequate and unsafe to detect drivers who are unlicensed and/or driving with licenses based on incorrect or out of date information proscribed by law.

30.    Enterprise entrusted a vehicle to Hexaware's Driver, operating without a valid and properly obtained and retained license.

31.    Had Enterprise chosen not to entrust a vehicle to Hexaware's Driver, then the wreck would not have occurred.

32.    Enterprise's acts and omissions described herein caused or contributed to causing the damages set forth herein.

**HEXAWARE DRIVER ALLEGATIONS**

33.    Hexaware is vicariously liable for all damages caused by Hexaware's Driver and Hexaware's Passenger because each were in the course and scope of employment with Hexaware at the time of all subject occurrences, at the time of all alleged negligence, recklessness, gross negligence, and negligence per se.

34.    On or about October 1, 2019, Hexaware's Driver was negligent, negligent per se, grossly negligent, and reckless in the operation of a motor vehicle, causing or contributing to causing personal injuries and wrongful death to Plaintiff in Murray County, Oklahoma.

35.    Hexaware's Driver was negligent per se in that Hexaware's driver broke rules set forth by various laws and rules, including those set forth in the Oklahoma Driver's Manual,[8] the Tennessee Comprehensive Driver License Manual,[9] and the Illinois Rules of the Road[10] by, among others.

36.    Hexaware's Driver violated Plaintiff's privilege of the immediate use of the roadway.  47 O.S. Section 1-156; and was thus negligent per se.

37.    Hexaware's Driver breached 47 O.S. Section 11-102 that states it is unlawful for any person to do any act forbidden or fail to perform any act required in Chapter 11, Rules of the Road; and was thus negligent per se.

38.    Hexaware's Driver breached 47 O.S. Section 11-201 that requires obedience to all traffic control devices, inclusive of double yellow lines that required the Hexaware Driver to stay on his side of the turnpike and not come across the center line and those that proscribed driving in excess of the posted speed limit.

39.    Hexaware's driver was speeding in excess of the posted speed limit of 65 miles per hour and was thus negligent per se.

40.    The following exhibit shows the pre-crash speed data for the Hexaware Driver to

---

8 https://www.ok.gov/dps/documents/driver_manual.pdf

9 https://www.tn.gov/content/dam/tn/safety/documents/DL_Manual.pdf

10 https://driving-tests.org/wp-content/uploads/2019/12/IL_dsd_a112.pdf

be 70.8 miles per hour in the seconds leading up to the crash that caused the death of

Plaintiff.

41.     The trooper shows legal speed at 65 miles per hour:



42.     This chart shows how the Hexaware vehicle was going in excess of the speed limit

up to the time of the crash and that no brakes were deployed before impact:

**Pre-Crash Data -5 to 0 Sec (Event Record 1)**

| Time (sec) | Speed, Vehicle Indicated (MPH [km/h]) | Accelerator Pedal, % Full (%) | Engine RPM (rpm) | Motor RPM (rpm) | Service Brake, On/Off | Steering Input (deg) |
|---|---|---|---|---|---|---|
| -5.0 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 2.5 |
| -4.5 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 2.5 |
| -4.0 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 2.5 |
| -3.5 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 2.5 |
| -3.0 | 70.8 [114] | 0 | 1,800 | 1,900 | "OFF" (Brake not activated) | 2.5 |
| -2.5 | 70.8 [114] | 0 | 1,800 | 1,900 | "OFF" (Brake not activated) | 2.5 |
| -2.0 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 2.5 |
| -1.5 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 2.5 |
| -1.0 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 2.5 |
| -0.5 | 70.8 [114] | 0 | 1,900 | 1,900 | "OFF" (Brake not activated) | 5.0 |
| 0.0 | 70.8 [114] | 0 | 1,800 | 1,800 | "OFF" (Brake not activated) | 5.0 |

43.    Hexaware's Driver breached 47 O.S. Section 11-301, Section 11-306, and Section 11-307 which required Hexaware's driver to only drive on the right half of the roadway, not to drive to the left side of the roadway within a no-passing zone, or on the left side of any pavement striping designated to mark such no-passing zone, and was thus negligent per se.

44.    Hexaware's Driver breached 47 O.S. Section 11-309 which required that Hexaware's Driver only drive within a single lane and not be moved from the lane until Hexaware's Driver has first ascertained that the movement can be made safely and then

given a signal and which requires that drivers not drive in the left lane of a roadway, and was thus negligent per se.

45.     Here is a picture of the double yellow line that the Hexaware driver crossed over:



46.     Hexaware's Driver breached Hexaware's Driver's duty not to injure or kill another person or property or infringing on the rights of others set forth in Title 76, Section 1.

47.     Hexaware's Driver breached 47 O.S. Section 11-801 by driving Enterprise's vehicle on a highway at a speed that was not careful, not prudent, was not less than what was reasonable and proper, did not give due regard to the traffic, and did not give care for opposing traffic. Hexaware's Driver also did not drive the vehicle at a speed that would

give the Hexaware Driver enough time to bring the Enterprise vehicle time to stop within the assured clear distance ahead in violation of the same statute. Hexaware's Driver also did not drive within the posted speed limit. For these reasons, Hexaware's Driver was negligent per se.

48.     Hexaware's Driver breached 47 O.S. Section 11-901 which proscribes reckless driving because Hexaware's Driver chose to drive in a careless or wanton manner without regard for the safety of persons or property in violation of the conditions set forth in other statutes. As a result, Hexaware's Driver was negligent per se and reckless per se.

49.     Hexaware's Driver breached 47 O.S. Section 11-901b that demands that all drivers devote their full time and attention to such driving. As a result, Hexaware's Driver was negligent per se.

50.     Hexaware's Driver may have violated 47 O.S. Section 11-901c that states it is unlawful for any person to operate a commercial motor vehicle on a highway within Oklahoma while using a cell phone or electronic device or using a hand-held mobile phone. This is subject to discovery. As a result, Hexaware's Driver may have been negligent per se for this reason too.

51.     Hexaware's Driver proximately caused the death of Plaintiff as a result of driving within reckless disregard of the safety of others and is guilty of negligent homicide. As a result, Hexaware's Driver was negligent per se.

52.     Upon information and belief, Hexaware's Driver caused the subject wreck without a truly valid driver's license in violation of 47 O.S. Section 11-905 (see above explanation for why it is believed that Hexaware's Driver was not properly licensed at the time of the wreck.), may be subject to a felony conviction pursuant to the terms of this statute and is

certainly negligent per se as a result, subject to discovery.

53.     Hexaware's driver violated Plaintiff's privilege of the immediate use of the roadway, violated the rules of the road, did not obey all traffic control devices, did not obey the speed limit, did not obey the double yellow line, exceeded the posted speed limit, never hit brakes before impact, took no meaningful evasive actions to avoid the wreck, drove on the wrong side of the road, drove while distracted, drove at a speed that was not reasonable and proper, did not drive at a speed slow enough to stop if needed, drove recklessly, failed to devote full time and attention to driving, drove without an appropriately obtained driver's license, and caused a wreck without a proper driver's license.

54.     For these reasons, and others, Hexaware's driver was negligent per se and negligent in causing the subject wreck.

55.     Hexaware's driver drove the Enterprise vehicle into the opposing lane of traffic and struck Randi Shavonne Kirkland's vehicle head-on as he travelled on the Chickasaw Nation Turnpike near Sulphur, Oklahoma.

56.     Here is a picture of Enterprise's car after Enterprise rented it to Hexaware and Hexaware's Driver and Hexaware caused the subject wreck and death of Plaintiff:



57.     Here is a picture of the vehicle that Hexaware's vehicle struck (being driven by Plaintiff) after Hexaware's Driver struck the vehicle, caused it to roll, hurt and kill the Plaintiff:



58.     This narrative comes from the Trooper's collision report, Exhibit 00013.  Unit 1 is

the Hexaware/Enterprise vehicle:

Remarks

UNIT 1 WAS EASTBOUND ON THE CHICKASAW NATION TURNPIKE. UNIT 2 WAS WESTBOUND ON THE CHICKASAW TURNPIKE. UNIT 1 CROSSED THE CENTER LINE STRIKING UNIT 2 ON THE WESTBOUND SHOULDER. UNIT 1 CONTINUED EASTBOUND COMING TO REST ON THE WESTBOUND SHOULDER. UNIT 2 DEPARTED THE ROADWAY TO THE LEFT CAUSING UNIT 2 TO ROLL COMING TO REST IN THE DITCH. DRIVER OF UNIT 2 WAS EJECTED FROM THE VEHICLE. DIAGRAM AND MEASURMENTS STORED WITH THE TRAFFIC HOMICIDE UNIT.

PHOTOS WERE TAKEN BY TRP KEN DUNCAN #451 AND WERE STORED AT TRAFFIC HOMICIDE UNIT.

59.     Randi Kirkland did nothing contributorily negligent to cause the wreck.

60.     The sole cause of the wreck was the Defendants' wrongful conduct more fully

described herein.

**HEXAWARE'S PASSENGER ALLEGATIONS**

61.     A passenger in a vehicle has a duty to "warn driver and remonstrate with driver in

regard to method of operation, and it would be negligence on the part of passenger" to fail to do so. <u>Disney v. Cook</u>, 1969 OK 115, 457 P.2d 552, 557.

62.     On October 1, 2019, Hexaware's Passenger was negligent and breached his duty to warn Hexaware's Driver and remonstrate.

63.     As a result, this caused and/or contributed to causing personal injuries and wrongful death to Plaintiff.

64.     At the time, Hexaware's Passenger was within the course and scope of employment, agency, contract, partnership, and/or joint venture one with Hexaware's Driver and/or Hexaware.

65.     Hexaware is vicariously liable for Hexaware's Passenger's wrongful actions described herein.

## ALLEGATIONS REGARDING ALL DEFENDANTS

66.     Defendants' negligence, recklessness, gross negligence, negligence per se, and other wrongful conduct described herein and otherwise later discovered through discovery, caused personal injuries to Randi Shavonne Kirkland, conscious pain and suffering to her person, and her wrongful death.

67.     The following portion of the death certificate shows that the date/time that Defendants caused Plaintiff's injury was 10/01/2019, 21:43 (the approximate time of the collision), but the death was not until 10/01/2019, 22:25.

ARBUCKLE MEMORIAL HOSP                                    SULPHUR, OKLA

completed by the Attending Physician or Medical Examiner

| 29. DATE OF DEATH (Mo/Day/Yr) | 30. TIME OF DEATH | 31. WAS MEDICAL EXAMINER CONTACTED? | 32. WAS |
| OCTOBER 1, 2019 | 22:25 | YES | |

**CAUSE OF DEATH (See Instructions and examples)**

34. **PART I.** Enter the chain of events- diseases, injuries or complications – that directly caused the death. DO NOT enter terminal events such as card
respiratory arrest or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE.  Enter only one cause on a line. Add additional lin

IMMEDIATE CAUSE (Final disease or
condition resulting in death ----------→  a.  ACUTE MULTIPLE BLUNT FORCE TRAUMA
                                              Due to (or as a consequence of):

Sequentially list conditions, if any, leading    b. _____
to the cause listed on line a.                       Due to (or as a consequence of):

Enter the UNDERLYING CAUSE (disease    c. _____
Or injury that initiated the events resulting in     Due to (or as a consequence of):
death) LAST.                             d. _____
                                             Due to (or as a consequence of):
1904904

| 36. MANNER OF DEATH | 37. IF FEMALE: |

36. MANNER OF DEATH
☐ Natural  ☐ Homicide  ☒ Accident  ☐ Suicide
☐ Pending Investigation  ☐ Could not be determined

37. IF FEMALE:
☐ Not pregnant within past year  ☐ Pregnant at time of death  ☐ Not pregnan
☐ Not pregnant, but pregnant 43 days to 1 year before death  ☒ Unknown if pre

| 39. DATE OF INJURY (Mo/Day/Yr) | 40. TIME OF INJURY | 41. PLACE OF INJURY (e.g., Decedent's home; construction site; wooded area) |
| 10/01/2019 | 21:43 | ROADWAY |

City or Town: ROFF

68. The following are pictures of the Plaintiff before her death was caused by Defendants.

69. Here is a picture of Randi as a baby:



Randi
10-1-82 20123

70. Here are pictures of Randi as a child:





71.    Here are pictures of Randi as a young woman:













72.    Here is Randi as a mom:





73.     The above were just a few pictures of the mother and daughter whose death was caused by the Defendants' wrongful conduct.

74.     Plaintiff demands judgment against all Defendants for all resulting actual personal injury and wrongful death damages; for an amount in excess of $75,000.

75.     Wrongful death damages include, but are not necessarily limited to:

   a.  The grief of the children and parents of Randi Kirkland;

   b.  The loss of care, training, guidance, or education that would have been forthcoming from Randi Kirkland to her children;

   c.  The loss of companionship of Randi Kirkland by the children;

   d.  The loss of companionship of Randi Kirkland by her parents;

   e.  Randi Kirkland's physical pain and suffering; and

   f.  The medical and burial expenses.

76.     Personal injury damage elements for consideration by the Jury include, but are not necessarily limited to:

   a.  Past physical pain and suffering from the time of the wreck until death;

   b.  Past mental pain and suffering from the time of the wreck until death;

   c.  Change in physical condition immediately before and after the wreck caused by Defendants;

   d.  The nature and extent of the injuries caused by Defendants (which were catastrophic);

   e.  The permanent nature of her injuries that were inflicted from the time of the wreck until her death;

   f.  The total physical impairment from the time of the wreck until her death;

g.  The disfigurement caused by Defendants that Plaintiff had from the time of the wreck until the time of her death;

h.  Loss of earnings for the remainder of Plaintiff's life expectancy;

i.  Loss of valuable time;

j.  Impairment of earning capacity caused from the time of the wreck until death and then from death until life expectancy; and

k.  The reasonable expenses of the necessary medical care, treatment, and services, in the past.

77.     Plaintiff also requests punitive damages against Defendants in an amount in excess of $75,000 per Defendant.

**BRANUM LAW FIRM, PLLC**

_____
John Branum, OBA No. 20165
Jay M. Mitchel, OBA No. 20784
Jessica S. Ladd, OBA No. 33821
9600 South May Avenue
Oklahoma City, Oklahoma 73159
(800) 318-9950 Telephone
(800) 418-8210 Facsimile
Email lit@branumlawfirm.com

-and-

**SPEED LAW OFFICE**
Jimmy D. Speed, OBA No. 22010
123 Market Square
Historic Downtown Durant
Durant, Oklahoma 74701
Telephone (918) 924-5291
Facsimile (888) 456-7056
Email speedslaw@gmail.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of December 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants.

Sterling E. Pratt (Counsel for Hexaware, et al)
Robert D. James (Counsel for Enterprise, et al)

**BRANUM LAW FIRM, PLLC**

_____
John Branum, OBA No. 20165
Jay M. Mitchel, OBA No. 20784
Jessica S. Ladd, OBA No. 33821
9600 South May Avenue
Oklahoma City, Oklahoma 73159
(800) 318-9950 Telephone
(800) 418-8210 Facsimile
Email lit@branumlawfirm.com

-and-

**SPEED LAW OFFICE**
Jimmy D. Speed, OBA No. 22010
123 Market Square
Historic Downtown Durant
Durant, Oklahoma 74701
Telephone (918) 924-5291
Facsimile (888) 456-7056
Email speedslaw@gmail.com
**ATTORNEYS FOR PLAINTIFF**